**FILED**

MAY 2 4 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA**

NURSAT I AYGEN                   :
2705 S 9th Street, Apt 31-B
Arlington, VA  22204             :
*(202) 215-5160*
        **Plaintiff,**        :

    **v.**                     :

                :

**DISTRICT OF COLUMBIA**          :
**PUBLIC SCHOOLS**
**1200 First Street, NE**
**Washington, DC  20002**

                :
                :
    **Defendant.**           :

Case: 1:10-cv-00847
Assigned To : Collyer, Rosemary M.
Assign. Date : 5/24/2010
Description: Employ. Discrim.

**Civil Action No.**

**May 21, 2010**



**COMPLAINT**

**JURISDICTION**

1.  This action is authorized and brought under the federal Family and Medical Leave

    Act (FMLA), 29 U.S.C. §2601, et.seq. at §2617(a)(2) and

2.  The plaintiff, Miss Aygen (hereafter referred to as Miss Aygen or the plaintiff)

    alleges that, in terminating her employment, the defendant interfered with her

    rights protected under the FMLA and retaliated against her for requesting and

    taking leave authorized under those laws.

3.  The plaintiff also seeks the enforcement of the Initial Decision of the Office of

Employee Appeals (OEA) on April 18, 2005 which was upheld in the Final OEA

decision of May 23, 2008 and became final on June 2, 2008 under OEA Rule 633.3 for

reinstatement, back pay and benefits arising from the wrongful termination on

Valentine's Day 2003, February 14, 2003, without cause or explanation and against the

wishes of the plaintiff's supervisor, a termination recommended by unknown person(s).

1

## PARTIES

3.  The plaintiff, Miss Nursat I Aygen, is a United States citizen who currently resides in Arlington, VA.

4.  The defendant, District of Columbia Public Schools, (hereafter referred to as the defendant or DCPS) is a District of Columbia Agency responsible for educating the children of the District of Columbia.

5.  During the time periods relevant to this complaint, DCPS was an employer of Miss Aygen as defined by the FMLA, 29 U.S.C. §2611(4).At all times relevant herein, on information and belief  DCPS employed 20 or more and 50 or more persons for 20 or more calendar workweeks in the calendar year during which Miss Aygen took family leave.

6.  During the time periods relevant to this complaint, Miss Aygen was an employee eligible to take family leave under 29 U.S.C. §2611(2). In the 12-month period previous to requesting family leave, she had worked for the defendant as a full time teacher and had at least 1250 hours of service for the defendant.

## STATEMENT OF THE CLAIM

7.  The plaintiff, Miss Aygen, began her employment with the defendant on February 1998 as an elementary school teacher in southeast Washington, DC.

8.  Miss Aygen became a full-time Visiting Instruction Services (VIS) teacher January 2000, teaching sick children at their homes and hospital rooms all high-schools subjects with great success in some of the poorest neighborhoods of Washington,

DC. Her supervisor Dr Beverly H Wallace wrote that she was "an exemplary teacher."

9.  However, at the instruction of unknown person(s) Miss Aygen was terminated wrongfully on Valentine's Day 2003, February 14, 2003, effective March 14, 2003, with the pretext of excessing, without any documentation, without cause or explanation and against the wishes of her supervisor, Director of Visiting Instruction Services Dr Beverly H Wallace and Assistant Superintendent Ralph Neal, parents, and students on the recommendation of unknown person(s).

10. Miss Aygen filed a case pro se with the DC Office of Employee Appeals (OEA). She won an initial decision for reinstatement, back pay and benefits on April 18, 2005. Even though there was a shortage of VIS teachers for the sick children in DC, DCPS instead of hiring Miss Aygen back and making her whole, DCPS chose to appeal this decision with the large  and expensive law firm of Venable knowing full well the case had no merit.  DCPS retained this very big law firm to further deny her right to work at a job she was very good at.

11. Miss Aygen's case was scheduled for a final decision by the OEA Board on October 2005 by Sheila Barfield, General Counsel for OEA.  However, the case was taken off the docket without an explanation and not rescheduled until May 2008 when the entire Board had changed due to death and attrition.

12. On May 23, 2008 the OEA Board affirmed the initial decision for reinstatement. This decision became final five business days later on June 2, 2008 under OEA rule 633.3

13. To date DCPS has refused to comply with this OEA order to reinstate and make Miss Aygen whole.

14. About the end of summer of 2005, Miss Aygen found out that there was a job opening with DCPS for a VIS teacher. The City was obligated to recall and place Miss Aygen. They did not. Miss Aygen, , had to apply and was interviewed for the job as if she was coming off the street.

15. After panel interviews, VIS Director Dr Beverly H Wallace, Miss Aygen's former supervisor who had opposed Miss Aygen's illegal excessing/termination in 2003, indicated that Miss Aygen was the best qualified candidate and recommended that Miss Aygen be hired. The city had no choice but to hire Miss Aygen, but did so at a level lower than when she was illegally forced out in 2003. DCPS hired her at $51,107, below step 4 for an ET-15 teacher at Master's plus 60, a level lower than when she was forced out illegally in 2003,but according to herW-2 actually paid her about 10 thousand dollars less.

16. After the retirement of Dr Wallace Christmas 2006, Miss Aygen was subjected to a campaign of intolerable harassment at the personal, religious and instructional levels.

17. Miss Aygen's mother who was very healthy at the time of her daughter's illegal termination in 2003 stopped taking her early morning two hour brisk walks and her health started to decline for the first time in her life.

18. On March 31, 2008 while Miss Aygen was on duty in Southeast Washington Miss Aygen's mother was taken by ambulance to the hospital. She was intubated in the ER and was admitted to ICU later in the day.

19. On the morning of April 1, 2008, on or about 8 o'clock Miss Aygen called Janice Talley-Melvin, (Ms Melvin, hereafter) the new Director of VIS. The call was placed from her mother's ICU room where her mother was on life support and Miss Aygen's request for leave was granted by Ms Melvin and DCPS started paying her accrued sick leave in lieu of unpaid FMLA leave. DCPS deducted a half day of sick leave on 3/31/08 even though, the teacher had completed the work day. Ms Melvin was unusually nice and told Miss Aygen not to worry about her job, nor the students, and grades, but to take care of her mother as long as it was necessary.

20. Miss Aygen continued to be in contact with her supervisor Ms Melvin almost daily. After a few weeks the division secretary started calling her weekly.

21. On May 5, 2008 one of the nurses faxed a letter (dated May 4, 2008) for MissAygen written by one of the hospital doctors from Miss Aygen's mother's hospital indicating dates of the mother's hospitalization to Ms. Melvin. The fax was confirmed as having been received.

22. The next day, May 6 2008, Miss Aygen called Ms Melvin and confirmed that Ms Melvin had received the fax. Ms Melvin said that was not enough and that Aygen had to write a statement saying she was the caregiver for her mother. She also said, "You are out of leave." Ms Aygen did not know how much sick leave she had left, or if this was a true statement. Miss Aygen, once again, updated her mother's condition giving detailed information such as she was now out of ICU in the vent unit, about her two aspiration pneumonias ,one of her hospital bed wounds was 2by 4 by 2, etc. Ms Melvin said nothing about the fact that her job was in jeopardy and that she had written a

5

recommendation that Miss Aygen be terminated due to alleged "insubordination"

23. Miss Aygen followed Ms Melvin's instructions and wrote statements that were faxed from the hospital on 5-8-08 and on Mother's Day 5-11-08.

24. On May 12, 2008 Miss Aygen transferred her mother to a nursing home which gave her 24 hour access to her mother, the way the hospital had done. Her mother was still in grave condition and on full-code.

25. On May 20, 2010 Aygen sent a written request to Ms Melvin for FMLA help, which was faxed from the nursing home.

26. On May 22, 2008, Miss Aygen received a call while she was in the nursing home with her mother from the Director of Labor Relations Ms Loretta Blackwell. Ms. Blackwell wanted to know about the medical condition of her mother and why Miss Aygen was with her in the hospital and now in the nursing home. Miss Aygen explained to Ms Blackwell that her mother was in grave medical condition and needed constant attention. She further explained the need for her to perform translation and communication services for medical reasons. Miss Aygen told Ms Blackwell that her supervisor had not sent her any FMLA papers. Blackwell promised she would send applicable FMLA papers by Fax to the nursing home the next day and that she would call the next day.

27. The next day, the nursing home doctor wrote a note addressed to the employer of Miss Aygen saying that her mother was very sick, and indicating the medical reasons, including the need for translation as to why it was medically necessary for Miss Aygen to be with her mother at all times.

28. Ms. Blackwell did not call Miss Aygen. On April 23, 2008 Miss Aygen called and talked with both Ms Melvin and Blackwell; Ms. Blackwell again promised to fax papers to the nursing home.

29. On May 27, 2008 when Miss Aygen was able to take a couple of hours from the nursing home, she went back to work to turn in the children's grades and to make yet another written request for FMLA  papers. She put the papers in Ms Melvin's' hand who was sitting at her desk. Ms Melvin wanted Miss Aygen to take the papers back and wanted Aygen to take them "downtown." Ms Melvin ran after miss Aygen , screaming (as was her custom).  Miss Aygen  was afraid for  her safety, but Melvin did not touch her.  Ms Melvin basically chased Miss Aygen from of the building. This was odd behavior even for Ms Melvin.

30.  DCPS claims that they terminated/suspended Miss Aygen on May 27, 2008 while Miss Aygen was still on FMLA leave tending to her critically ill mother because she was allegedly insubordinate to Janice Talley Melvin in extending her instructional time with a special needs child without prior approval (There is no such rule, if there were it would be an absurd rule as there is no way of knowing how a sick child will feel at a particular time in the future and the goal with all children should be to maximize instruction as the DCPS website currently acknowledges) The child's mother Ms Sarah Lee sent emails to DCPS Chancellor Michelle Rhee and   other top DCPS officials praising Miss Aygen's work and asking her back as the child's teacher. All to no avail.

31. On March 15, 2010 Ms Sarah Lee and her son Mr. Donzel Maddox publicly testified before the Committee of the Whole of the DC Council in support of .Miss

Aygen in the presence of Chancellor Michelle Rhee, again to no avail. Donzel expressed his anger that his name was used to fire Miss Aygen, whom he referred as his second mother.  Both mother and child praised Miss Aygen as a very good teacher and indicated how much the child had learned from her and how much positive effect she had on the child. The mother said Miss Aygen"had proved to be a very good teacher." The mother said Miss Aygen went beyond the call of duty and that she wanted more teachers like Miss Aygen. The mother indicated that the child came to the hearing even though he was in pain due to his medical condition.

32.   Ms Melvin knew acts of alleged "insubordination" were baseless and fabricated, and against the interests of the children, and against common sense. All of the alleged acts of insubordination all predated Miss Aygen's mother's hospitalization on March 31, 2008.  Nevertheless ms Melvin said nothing to Miss Aygen about her intentions to terminate or suspend her while Miss Aygen was on leave trying to keep her mother alive.

33 At the time of the alleged termination of May 27, 2008, Miss Aygen was still on leave as defined under DC Code §32-502(a)(4). Miss Aygen had requested the leave to care for her mother who had been hospitalized in critical condition in ICU in Arlington, Virginia since March 31, 2008.

34 When the academic school year for 2007/2008 ended on June 13, 2008 Miss Aygen had used 10 weeks and three days of her FMAL leave of 12 weeks.

35 The next academic year started on August 19, 2008 where Miss Aygen was assigned to a new job at the Brightwood Elementary School and used some of the

remainder of her FMLA leave and she continued to get paid her sick leave in lieu

of unpaid FMLA leave with the approval of the new principal, Wanda Fox.

36. In willful violation of FMLA, DCPS is now saying that Miss Aygen was not on

leave but was AWOL in spite of pay records indicating otherwise.

37. DCPS continued to harass Miss Aygen by claiming," You were absent without

leave from April 1, 2008 to April 27, 2008 to care for your ailing mother" The pay

stubs indicate that Miss Aygen was indeed on leave. However, DCPS gave her a

new assignment starting the first day of the school year August 19, 2008 to report

to Brightwood Elementary School.  However, Miss Aygen was told by Jasmine

Jose and Ms. Higgins of DCPS on September 24, 2008 not to go back to work at

Brightwood ES . This illegal action was taken without putting anything in writing.

38The next day Miss Aygen was barred from the building by the principal Ms Wanda

Fox. There is no cause for this termination. There are no complaints about Miss

Aygen's  performance as a teacher, no letter of termination, as there is no formal

letter of termination to date.

39 DCPS is claiming that Brightwood assignment was a mistake. In effect, the position

of DCPS is that Ms Aygen was hired without being hired and fired without being fired

at Brightwood Elementary School. There is no any evidence of cause, or any affidavits.

40. The new Director of Labor Relations, Traci Higgins, set up a meeting

for October 3, 2008 to discuss Miss Aygen's reinstatement. In setting

up the meeting on September 24, 2008 Higgins told Miss Aygen that

there was a new management in town and that she was going to be fair. However, the meeting became a non meeting. Two parents (Ms Cynthia Carter and Mr. G. Metcalf) who had traveled from across town from southeast and who had nominated Miss Aygen for teacher of the year to Mayor Fenty and Ms Rhee were not allowed to speak on her behalf. Miss Aygen was not allowed to speak on her own behalf. Higgins dismissed the meeting.

41. Once again, DC is denying Miss Aygen's rights as a teacher for due process and redress. DCPS will not give her a chance to defend herself because they have no grounds upon which to base this latest willfully wrongful termination.

42. These alleged absurd charges Miss Aygen has not been allowed to address are so inconsequential that they are not documented anywhere as grounds for immediate termination or any other action.

43. Further, Ms Melvin failed and refused to give Miss Aygen a written performance evaluation after her structured observation of December 6, 2007 under the Professional Performance Evaluation Process (PPEP), the only instrument for DCPS teacher evaluations at that time. Even though Miss Melvin praised Miss Aygen's work verbally, including her lesson plan for the day, she did not give her a written evaluation as required under PPEP. Under PPEP rules Ms Melvin was

obligated to give a written evaluation within 10 days of the structured observation.
Miss Aygen should have received this performance evaluation in 10 days. Miss
Aygen wrote about this to Chancellor Rhee who passed it on to her Rapid Respond
Team who has been responding rapidly for the past two years.

43 a. Miss Aygen's last structured observation (evaluation) November 16, 2006
indicates "Exceeds Expectations"

43b In accordance with Article XVI of the WTU contract, all teachers are subject to an
evaluation process called PPEP as indicated above. PPEP is the only official
process by which the performance of any teacher is evaluated. Miss Melvin and
the new DCPS management wrongfully ignored PPEP.


44. On the day of her structured observation, Ms Melvin tried to upset Miss Aygen
hoping she would not do well and that a pretext could be created to put her on the 90
day plan to fire her. However, the lesson went very well, and
her student a young man paralyzed form the waist down due to a gunshot wound, was
brilliant. The lesson was about the Holocaust, and the student wrote a great piece on
Anne Frank.

45 DCPS through Janice Talley Melvin is claiming a "March 20th". March 20, 2008
was the last day before spring break and the day after spring break, March 31,
2008, Miss Aygen's mother was admitted to ICU. There are no memos about
March 20th. Miss Aygen did not hear of these ridiculous allegations for many
months. March 20th is a fabrication. DCPS is claiming that on that date a mother

11

complained that Miss Aygen was pushing her son too hard to study and that she did not leave her home until she insisted that Miss Aygen leave. The said mother was not even at home on that day.

Even if this were true this does not rise to the level of termination. If there was a parent complaint, under the Union Contract, every effort had to be made to resolve the issue, failing that Miss Aygen was to receive a certified letter of the complaint in 72 hours. This did not happen.

46. In terminating Miss Aygen's employment for no good reason at all, against FMLA, the Union contract, DC laws, and against the interests of DC students, reasons that were false, absurd, and fabricated offenses, without giving her a chance to respond and taking advantage of her mother's devastating health condition and while she was on leave tending to her critically ill mother **the defendant interfered with , restrained and denied Miss Aygen her rights as an employee eligible for such leave under the FMLA and retaliated against her for requesting and taking such leave. The defendant thus violated 29 U.S.C. §§2614 and 2615 and DC Code §32-507. .**

47. The allegations of DCPS make a mockery of the teaching process. A teacher that goes beyond the call of duty should be praised not fired arbitrarily. Before the change in leadership in VIS, Miss Aygen even worked with a child in ICU. The testimony of this child's mother Ms Margarito Calvo is in the attached video of parent student testimonies about Miss Aygen before DCPS Board of Education.

12

These testimonials prove what an effective teacher Miss Aygen was.

48. The defendant interfered with, restrained and denied Miss Aygen her rights as an employee eligible for such leave under the FMLA and retaliated against her for requesting and taking such leave.  The defendant thus violated 29 U.S.C. §§2614 and 2615 and DC Code §32-507.

49. As a result of the defendant's violations of the FMLA Miss Aygen has suffered, and continues to suffer, a loss of employment, lost compensation and benefits, and other rights and privileges of her employment. The defendant has caused great distress at a time when Miss Aygen needed her peace of mind and all her resources while attending to her mother's health who passed away February 2010. US Congress passed the federal law FMLA to prevent such a case as Miss Aygen's willful mistreatment by DCPS. DCPS also knew  that Miss Aygen's mother was her financial dependent.

50. **The defendant cannot prove that it acted in good faith or that it had a reasonable belief that it was not violating the FMLA**

51. The defendant did not maintain Miss Aygen's health insurance in violation of FMLA and did not provide her with Cobra.

52 .Before the change in leadership at VIS, Miss Aygen received nothing but glowing reports from her supervisors, hospital staff at Children's Hospital, parents and students. Her supervisor wrote that she was both a very effective and exemplary teacher.  Dr Wallace wrote, "In observing Ms Aygen as a teacher, she displayed warmth and a genuine love for teaching. She was and continues to be an advocate for children. She always went the extra mile in assisting them. She was respected by her peers, parents, students, and hospital staff."

The VIS management changed with the retirement of Dr Wallace, but the quality and standards of the teaching of Miss Aygen did not change. Unfortunately, there is no one in the Rhee administration who knows about the specialized field of working with sick children. VIS, a formerly very successful DCPS program was turned upside down and became a shadow of its former self to the disadvantage of the sick children of our nation's capitol as this case will prove.

## DEMAND FOR RELIEF

WHEREFORE, Miss Aygen requests that the Court award her the following relief:

1.      Issue a ruling declaring that the defendant has violated her rights under the FMLA, and due process laws.

2.      Award her monetary damages to make her whole for all losses including, but not limited to, lost salary and benefits that she suffered because of the defendant's illegal conduct;

3.      Direct the defendant to reinstate her or, in the alternative, award her front pay;

4.      Award her additional liquidated damages for the defendant's willful violations of   the FMLA;

5.      Award her an additional sum equal to the amounts set forth in D.C. Code §32-509(b)(6);

14

6.      Award her pre- and post-judgment interest on all pay awarded;

7.      Direct the defendant to take any other actions that are necessary to give

her complete relief within the remedial scope of the FMLA, including awarding

costs incurred in this action and reasonable attorneys' fees she might incur.

8.  Award her any other legal or equitable relief to which she is entitled.

9.  Enforce the May 23, 2008 Final OEA decision for reinstatement, back pay

and benefits with interest.

10.  Award her local travel expenses denied her by Janice Talley Melvin, as

called for under the Union contract.

11. Apply all appropriate sanctions for the illegal acts of DCPS since 2003.

**DEMAND FOR JURY TRIAL**

Miss Aygen hereby demands a trial by jury regarding all issues that she is entitled

to under law.

Respectfully Submitted,

*Nursat N. D. Aygen*

The Plaintiff,
Nursat I Aygen, pro se
2705 S 9th Street, Apt 31-B
Arlington, Va 22204
202-215-5160

Attachments: OEA Decision of May 23, 2008 and April 8, 2005
Emails from Sarah Lee, mother of Donzel Maddox to Michelle Rhee et all
Testimony of Aygen before DC Council March 15, 2010 and supporting
documents
Last evaluation under PPEP "exceed expectations" on November 16, 2006.
A DVD tape of parent/student testimonies before DCPS Board of Ed, while
Miss Aygen was a VIS teacher under the supervision of Dr Wallace
Medical/leave/ FMLA documents

15