Notice: This decision may be formally revised before it is published in the District of Columbia Register. Parties should promptly notify the Administrative Assistant of any formal errors so that this Office can correct them before publishing the decision. This notice is not intended to provide an opportunity for a substantive challenge to the decision.

# THE DISTRICT OF COLUMBIA

## BEFORE

## THE OFFICE OF EMPLOYEE APPEALS

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| NURSAT I. AYGEN | ) | OEA Matter No. 1601-0004-04 |
|     Employee | ) | |
| | ) | |
| v. | ) | Date of Issuance: April 18, 2005 |
| | ) | |
| D.C. PUBLIC SCHOOLS | ) | Muriel A. Aikens-Arnold, Esq. |
|     Agency | ) | Administrative Judge |

Nursat I. Aygen, *Pro se*
Harriet Segar, Esq., Office of the General Counsel

### INITIAL DECISION

#### INTRODUCTION AND STATEMENT OF FACTS

On October 21, 2003, Employee filed a petition for appeal from Agency's decision to terminate her employment as a Visiting Instruction Service (VIS) Teacher effective March 14, 2003 due to "Declining Student Enrollment/Equalization."[1] Agency responded to the petition for appeal on September 20, 2004 after being notified by this Office and granted an extension to do so.

---

[1] The notice reflects that the action was taken in accordance with the provisions of the collective bargaining agreement between the Board of Education and the Washington Teachers' Union relating to excessing.

Agency's initial response to Employee's Petition for Appeal reflects its position that "the collective bargaining agreement is controlling regarding when and how a teacher is excessed . . . [I]t is not an abolishment of position but the implementation of a Board rule that controls the number of teachers and student ratio."[2]

This matter was assigned to the undersigned judge on September 24, 2004.  On November 12, 2004, an Order to Produce Documents was issued directing Agency to provide a file to support the action taken, including, but not limited to, specific documents no later than November 23, 2004.  Also, in that Order, the parties were notified regarding the imposition of sanctions for failure to comply with an Order or to produce documents within their control.  Agency filed its response on November 24, 2004.[3]  On December 10, 2004, Agency submitted a supplemental response to the previous Order.  In that response, Agency reiterated that "Employee was subject to excessing which resulted in [her] termination . . .", that she " . . . was not eligible for any available positions . . . and . . . this matter should be considered under the terms of the collective bargaining agreement."[4]

On January 4, 2005, an Order to Convene a Status Conference was issued scheduling said conference on February 8, 2005 to discuss jurisdiction in this matter with instructions to submit, *inter alia*, explanations regarding the basis of the termination and why the action was proper or improper no later than January 25, 2005.[5]  During that conference on February 8, 2005, Agency's Counsel stated, *inter alia*, that excessing (which is done by seniority) is a creature of the collective bargaining agreement which this Office is not authorized to address.  Employee asserted, during that conference, that her termination was not a result of excessing (which the agreement reflects as being a transfer and not a removal) and that no one in the agency could explain to her why she was terminated.[6]

---

[2] See Agency's response filed 9/20/04 at p. 2; it is noted that Agency did not submit a file pursuant to OEA Rule 610.1. Agency also asserts that Employee's petition for appeal was untimely filed, but that contention has no merit since Employee was not given appeal rights to this Office. *See Tatum v. D.C. Public Schools,* OEA Matter No. 1601-0013-03 (6/3/03),__ D.C. Reg.__ ( ).

[3] Agency submitted Employee's entire personnel folder and the union labor agreement.

[4] See Agency supplemental response at pp. 1-2; along with highlighted provisions of the union contract, Agency submitted an arbitration decision which addressed the excessing provisions of the union contract.

[5] Agency filed a prehearing statement on 2/7/05 in which it contends that the position was abolished due to budgetary reasons; that Agency acted in accordance with the collective bargaining agreement; and requested dismissal based thereon.

[6] On January 26, 2005, Employee filed a statement in which she argued, among other things, that her termination was wrongful; that student numbers do not exist or apply to VIS; that VIS teachers get cases; that there is no VIS

Based on the record, including recent submissions and arguments by the parties, this Judge found that further proceedings were not warranted and made the following decision. The record is closed.

JURISDICTION

This Office has jurisdiction in this matter pursuant to
D.C. Official Code § 1-606.03 (2001).

ISSUES

1) Whether this Office has jurisdiction in this matter; and

2) If so, whether Employee's termination constitutes an adverse action taken for cause.

FINDINGS OF FACT, ANALYSIS AND CONCLUSIONS

By advance notice dated February 13, 2003, Employee was advised that she would be terminated effective March 14, 2003 due to Declining Student Enrollment/Equalization. The notice read, in pertinent part, as follows:

> This is to officially inform you, in accordance with the provisions of the collective bargaining agreement between the Board of Education and the Washington Teachers' Union relating to excessing, that due to the student enrollment equalization, your employment with DCPS is being terminated. Your last day of work will be Friday, February 14, 2002.[sic] You will be placed on paid administrative leave until your effective termination date of Friday, March 14, 2003.
>
> If you meet the early retirement criteria, fifty years of age with twenty or more years of service, including five years of school service, or twenty-five years of service at any age, including five years of school service, you are eligible for a discontinued

---

school where student numbers are officially counted every Fall to determine the number of teachers as would be the case in a building; and that Agency has not provided official personnel or other pertinent documents in support of the action taken.

> service retirement annuity.  Note that the retirement annuity
> will be reduced by a 2% penalty for each year short of age
> fifty-five.  You may contact the Office of Human Resources
> at (202) 442-4080 for additional information regarding
> discontinued service retirement.  If eligible, you must submit
> your completed retirement application to the Office of Human
> Resources within ten working days of receipt of this letter.
>
> If you have any questions about this notice of termination,
> please contact the Office of Labor Management and
> Employee Relations at (202) 442-5373.

Although Agency argues that this matter constitutes an action taken in accordance with a negotiated labor agreement over which this Office has no jurisdiction, Agency has not demonstrated that this matter is anything but an improper termination of employment, over which this Office does have jurisdiction.  In fact, Agency presents two diametrically opposed positions.  One is that the action was *not* an abolishment of a position (*i.e.*, a RIF), but was an "excessing" pursuant to Article IV, Teacher Transfer Policy, Section C of the labor agreement ("Excessing"); the second is that "[T]he position was abolished due to the funding level or (sic) the Visiting Instruction Services Teachers (VIS)."[7]  In other words, Agency is arguing here that its action was a RIF.

However, the contractual provision cited does *not* provide the basis for the termination action taken by Agency.  Rather, the provision provides for a transfer within the agency, which clearly did not occur here.  Further, the February 13, 2003 notice, set forth above, informed Employee that her employment was being "terminated" effective a month later, but that she was being placed on paid administrative leave immediately.  This language is inconsistent with a RIF notice, but is consistent with notice of either a proposed removal or a summary removal.  But in either case the notice would contain: 1) a statement of "cause" for the action; and 2) a paragraph explaining how Employee could respond to the action and/or appeal it.[8]  The above document does neither.

Based on the entire record, this judge concludes that Agency's action removing Employee was not a RIF, but rather an adverse action taken without cause and without giving

---

[7] See footnotes 2 and 5.

[8] These requirements would not be necessary if Employee was in an "at-will" position.  However, there is no indication in the record that she was in such a position.

her the opportunity to respond.  Thus, it is an improper adverse action and as such must be reversed.

ORDER

It is hereby ORDERED that:

1) Agency's action removing Employee is REVERSED;

2) Agency reinstate Employee and reimburse her all pay and benefits lost as a result of the removal; and

3) Agency file with this Office documents showing compliance with the terms of this Order within thirty (30) days of the date on which this decision becomes final.

FOR THE OFFICE:

MURIEL AIKENS ARNOLD, ESQ.
Administrative Judge

Notice: This decision may be formally revised before it is published in the *District of Columbia Register*. Parties should promptly notify the Office Manager of any formal errors so that this Office can correct them before publishing the decision. This notice is not intended to provide an opportunity for a substantive challenge to the decision.

THE DISTRICT OF COLUMBIA

BEFORE

THE OFFICE OF EMPLOYEE APPEALS

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| NURSAT I. AYGEN | ) |
|     Employee | ) |
| | )    OEA Matter No.: 1601-0004-04 |
|     v. | ) |
| | )    Date of Issuance: May 23, 2008 |
| D.C. PUBLIC SCHOOLS | ) |
|     Agency | ) |

OPINION AND ORDER
ON
PETITION FOR REVIEW

Nursat Aygen ("Employee") was a teacher with the District of Columbia Public Schools' ("Agency") Visiting Instruction Service program. She had held this position since January 2000. On February 13, 2003 Agency informed Employee that it intended to terminate her employment effective March 14, 2003 due to declining student enrollment/equalization.

On October 21, 2003 Employee filed a Petition for Appeal with the Office of Employee Appeals ("OEA"). In her petition and supporting documents, Employee

alleged that Agency's action really amounted to an adverse action without cause. She asked that she be returned to her position and have restored all lost pay and benefits.

In an Initial Decision issued April 18, 2005 the Administrative Judge found in Employee's favor. The Administrative Judge stated that "[a]lthough Agency argues that this matter constitutes an action taken in accordance with a negotiated labor agreement over which this Office has no jurisdiction, Agency has not demonstrated that this matter is anything but an improper termination of employment, over which this Office does have jurisdiction."[1] The Administrative Judge went on to find that the contractual provision cited by Agency did not provide the basis for the termination action as Agency had claimed. Accordingly, the Administrative Judge held that "Agency's action removing Employee . . . [was] an adverse action taken without cause and without giving her the opportunity to respond."[2] For these reasons the termination action was reversed.

Subsequently Agency filed a Petition for Review on May 23, 2005. Employee filed a response on June 27, 2005. Agency's petition consists entirely of documents that were previously submitted to the Administrative Judge and includes, *inter alia,* such items as its prehearing statement and a response to an order issued by the Administrative Judge. Obviously the Administrative Judge did not find the contents of these documents to be persuasive and neither do we. Agency has failed to give any reason whatsoever as to why the Initial Decision should be overturned. Without more we are compelled to uphold the Initial Decision and deny Agency's Petition for Review.

---

[1]  *Initial Decision* at 4
[2]  *Id.* at 4-5.

## ORDER

Accordingly, it is hereby **ORDERED** that Agency's Petition for Review is **DENIED**.

FOR THE BOARD:

Sherri Beatty-Arthur, Chair

Barbara D. Morgan

Richard F. Johns

The Initial Decision in this matter shall become a final decision of the Office of Employee Appeals 5 days after the issuance date of this order. An appeal from a final decision of the Office of Employee Appeals may be taken to the Superior Court of the District of Columbia within 30 days after formal notice of the decision or order sought to be reviewed.

## NURSAT AYGEN'S TESTIMONY ON DCPS MISCONDUCT BEFORE DC COUNCIL, MARCH 15, 2010

My name is Nursat Aygen. I am here to testify to DCPS misconduct including arbitrary firings that were conducted with haste, without accountability and in complete disregard of all my rights over the years.

I chose teaching because I'm a human rights activist who believes education is a fundamental human right for all people regardless of social status or any other consideration. I am a summa cum laude graduate of Sweet Briar College where I was inducted into Phi Beta Kappa in my junior year. I also have an MBA from NYU Stern School of Business Administration. I have seven teaching certificates.

I respectfully request that the Council enforce the 2005 OEA decision to reinstate and make me whole, and ask that the Council conduct a formal investigation into my improper treatment including the circumstances of my job loss in 2003 where, to this day, DCPS still refuses to tell me who wrongfully fired me, a tenured teacher, without cause and without explanation.

I became a full time Visiting Instruction Services (VIS) Teacher in 2000, teaching all high school subjects to homebound children in their homes in some of the poorest sections of town and in hospital rooms. I received nothing but glowing reports from my supervisors, hospital staff at Children's Hospital, parents and students. My supervisor wrote that I was both a very effective and exemplary teacher.  Dr Wallace wrote, "In observing Ms Aygen as a teacher, she displayed warmth and a genuine love for teaching. She was and continues to be an advocate for children. She always went the extra mile in assisting them. She was respected by her peers, parents, students, and hospital staff."

During the Bush Administration on Valentine's DAY 2003 I was terminated under the pretext of "excessing" with non existing student numbers. Subsequently, I won reinstatement and back pay at OEA against DCPS lawyers. Instead of reinstating me, the government retained a very big law firm, Venable, Baetjer, Howard and Civeletti, to further deny me my

right to work. I represented myself *pro se*. I prevailed again, this time against Venable, without an attorney and was ordered reinstated with back pay. DCPS did not appeal this decision , but refuses to reinstate and make me whole. This should stop.

Three years after my job loss, I found out there was an opening at VIS. Under the rules of excessing the city was obligated to recall me . They did not. I interviewed, and Dr Wallace, my former supervisor, wanted me hired. DCPS had no choice but to hire me , but they did so at a level lower than when I was forced out illegally in 2003.

After Dr. Wallace's retirement I was subjected to intolerable harassment on a personal, religious ,and instructional level, and I was forced to work in a very hostile environment. I would constantly be ordered to cut my instruction short in the field and run back to the office on public transportation where I was subjected to harassment meetings that had nothing to do with the quality of my instruction. I was constantly dodging bullets.

When I became the first ever visiting teacher to take part in Leukemia and Lymphoma Society's Back to School Conference, my presentation was praised by the Fairfax County Principal of the Year, Brian Hull , in writing, but not by DCPS. In fact I received no recognition whatsoever.

My last structured observation (evaluation) on file indicates that I had exceeded expectations. The next year the new director of VIS conducted a structured observation but refused to give me anything in writing in direct violation of the rules for teacher evaluation Professional Performance Evaluation Process, PPEP. I wrote about this to Ms Rhee who passed it on to her Rapid Response Team leader who has been rapidly responding over the past couple of years.

On the day of my structured observation the new supervisor tried very hard to upset me so that I would not do well and a pretext could be created to put me on the 90 day plan to fire me. She gave three letters to me threatening to fire me, and followed me to my room to scream and yell at me before I set out to see my students. However, the lesson went very well and my student, a young man paralyzed from the waist down due to a gun

shot wound, was brilliant. The lesson was about the Holocaust and he wrote a wonderful piece about Anne Frank.

When my mother went into the ICU unexpectedly, for a long term hospitalization, I went on leave to try to save her life. DCPS started paying my sick pay when my mother was admitted to ICU. While I was with my mother fighting for her life in a hospital room, DCPS terminated me again for no valid reason. I was told I was terminated due to insubordination by extending my instructional time with a specific special needs student. The child's mother sent emails to Rhee and top officials praising me and asking me back as the child's teacher to no avail.  That child,Donzel, and his mother, Ms. Sarah Lee, are sitting right next to me.

Subsequently, DCPS ordered me to report to Brightwood Elementary School, which I did.  Approximately six weeks later, I was informed that my Brightwood assignment had been a mistake.  The new Director of Labor Relations, Traci Higgins, set up a meeting to discuss my reinstatement and told me there was a new management in town and that she was going to be fair. However, the meeting became a non meeting.  Two parents who had traveled from across town from southeast and who had nominated me for teacher of the year to Mayor Fenty and Ms Rhee were not allowed to speak on my behalf. I was not allowed to speak on my own behalf. She dismissed the meeting. Once again, I have no venue, no recourse for redress. DCPS will not give me a chance to defend myself because they have no grounds upon which to base my termination.  Can the Council investigate why I have been singled out for such unfair treatment?

I thank the Council. I ask that I be reinstated as a visiting teacher.  I also respectfully request this council conduct an official investigation into the circumstances of my improper treatment and my illegal firings and how VIS is being run now. I urge that all status hearings and telephone conferences be taped or at least allow claimants to tape them to minimize mischief and injustice at OEA and that OEA judges should not be allowed to take files out of the office.

Finally, I ask that my statement be placed in the record.


**YAHOO!** MAIL
Classic

**FW: Concerning Instructional Teacher Ms. Nursat Aygen**                    Friday, August 1, 2008 4.18 PM
**From:** "Sarah N. Lee" <LeeS@dcobc.org>
  **To:** "nursat aygen" <aygen111@yahoo.com>


This is the response that I received from Ms. Rhee.

---

**From:** Rhee, Michelle (OOC) [mailto:Michelle.Rhee@dc.gov]
**Sent:** Friday, August 01, 2008 4:16 PM
**To:** Sarah N. Lee
**Subject:** RE: Concerning Instructional Teacher Ms. Nursat Aygen

Thanks for your insights.

MR

---

**From:** Sarah N. Lee [mailto:LeeS@dcobc.org]
**Sent:** Friday, August 01, 2008 11:42 AM
**To:** Rhee, Michelle (OOC)
**Subject:** Concerning Instructional Teacher Ms. Nursat Aygen
**Importance:** High

Ms. Michelle Rhee, Chancellor
DCPS
825 N Capitol Street, N.E.
9th Floor
Washington, DC   20002


 Dear Ms. Rhee,

       I had the pleasure of having Ms. Nursat Aygen as my son, Donzel Maddox's, history instructional teacher for the year of 2007 – 2008.

       She and my son got along very well.  Ms. Aygen always spent additional time with him to make sure that he understood his assignments and even took time to go on the internet with my son for further instruction.

       It has been a long time since I met a teacher who seemed to be interested in my child's educational, physical and emotional well being.  She went the extra mile for Donzel.

       My son has missed her very much and expresses his hope of her remaining as his instructional teacher in the future.

If at all possible, I would like to request Ms. Aygen for the upcoming year as Donzel's instructional teacher in all subjects.

Please feel free to contact me with any further questions concerning Ms. Aygen. I may be reached at the following numbers listed below.

Sincerely

Sarah N. Lee
Donzel Maddox's Mom
(202) 610-0783 (Home)
(202) 454-1716 (Work)

**From:** Ferguson , Chad (OOC) [mailto: chad.ferguson@dc.gov ]
**Sent:** Sunday, August 10, 2008 10:51 AM
**To:** Sarah N. Lee
**Subject:** RE: Instructional Teacher Nursat Aygen

Dear Ms. Lee,

Thank you for your comments about Ms. Aygen. I'll be sure to pass them along in the event that they're requested or necessary in any discussion regarding Ms. Aygen's employment with DCPS.

Sincerely,
Chad Ferguson

---

**From:** Sarah N. Lee [mailto:LeeS@dcobc.org]
**Sent:** Friday, August 08, 2008 11:40 AM
**To:** Ferguson , Chad (OOC)
**Subject:** Instructional Teacher Nursat Aygen

Dear Mr. Ferguson,

My name is Sarah N. Lee, the parent of Donzel Maddox, who Ms. Aygen taught for the 2007-2008 school year.

I just wanted you to know that my son and I were very pleased with Ms. Aygen and were hoping that if my school requests an instructional teacher from your company that you would allow Ms Aygen to instruct my son in all subjects. They got along so well, and he expressed that he really learned a lot from her My son still asks for her, and he would like her to teach him in the future.

My feeling is mutual. Ms. Aygen took the extra time and went above and beyond the call of duty for Donzel. She spent extra time with him on the internet making sure that he understood his homework and that he knew how and where to search for additional information pertaining to his work.

Nothing was done without my permission regarding Donzel. Ms. Aygen informed me at all times what was expected of him and of all assignments.

If you have any further questions or would like to speak or meet with me, I can be contacted at (202) 610-0783 (Home) or (202) 454-1716 (Work).

Sincerely,


Sarah N. Lee
Donzel Maddox's Mom
(202) 350-1716 (cell)



**FW: Concerning Instructional Teacher Nursat Aygen**                  Friday, August 8, 2008 2:32 PM
**From:** "Sarah N. Lee" <LeeS@dcobc.org>
  **To:** aygen111@yahoo.com

Here is his response to me.

---

**From:** Ross, Jeff R. (OOC) [mailto:Jeff.Ross@dc.gov]
**Sent:** Friday, August 08, 2008 2:27 PM
**To:** Sarah N. Lee
**Subject:** RE: Concerning Instructional Teacher Nursat Aygen

Ms. Lee,

Thanks for taking the time to share.  We always appreciate hearing positive feedback from parents who are
pleased with their children's teachers.

All the best,
Jeff

Jeff Ross
Critical Response Team Leader
D.C. Public Schools
202-442-5238 (phone)
202-442-5026 (fax)
jeff.ross@dc.gov

---

**From:** Sarah N. Lee [mailto:LeeS@dcobc.org]
**Sent:** Friday, August 08, 2008 2:25 PM
**To:** Ross, Jeff R. (OOC)
**Subject:** Concerning Instructional Teacher Nursat Aygen
**Importance:** High

Dear Mr. Ross,

    My name is Sarah N. Lee, the parent of Donzel Maddox, who Ms. Aygen taught for the 2007-
2008 school year.

    I just wanted you to know that my son and I were very pleased with Ms. Aygen and were
hoping that if my school requests an instructional teacher from your company that you would allow
Ms. Aygen to instruct my son in all subjects. They got along so well, and he expressed that he really
learned a lot from her. My son still asks for her, and he would like her to teach him in the future.

    My feeling is mutual. Ms. Aygen took the extra time and went above and beyond the call of
duty for Donzel. She spent extra time with him on the internet making sure that he understood his
homework and that he knew how and where to search for additional information pertaining to his
work.

-----Original Message-----
From: cynthia1baby5@aol.com
To: aygen111@yahoo.
Sent: Mon, 13 Aug 2007 5:38 pm

**Cynthia A. Carter**
**1147 45th Place SE**
**Washington DC 20019**

8-2-2007

**Mayor Adrian M. Fenty**
**1350 Pennsylvania Avenue, NW**
**Suite 327**
**Washington, DC 20004**

   My fiancé's son attends Cardozo Senior High School his name is
Gerald Whitby during the school year of 2006/2007 Gerald was hospitalized for many
weeks and missed a great deal of time from school.   After consulting Gerald's
counselors and teachers at Cardozo we were introduced to DCPS home schooling
program.  When was applied to the home schooling program we were told the program
was not taking any more students.  Miss Nursat Aygen just happens to be in the office
when Mr. Metcalf was seeking assistance for his son.

   With a full schedule, Miss Nursat Aygen intervened and volunteered to add Gerald to
her home schooling schedule.  I was totally unaware a program like this existed.  Miss
Aygen visited my home as well as Gerald's grandmother's home.  Miss Aygen tutored
Gerald in this type of setting the remainder of the school year bring his grades up from
D's and F's to A's and B's.  Miss Aygen is a perfect example of what the words, (no child
left behind) truly mean.  Miss Aygen is a true teacher that must be commended for her
dedication to the children of Washington DC and her dedication to her profession as an
educator. Miss Aygen goes into some of the most dangerous communities in the
District to provide home schooling to children that have been home bound for some
reason or another.  There are no words to express the gratitude our family has for her
diligent hard work.  I personally would recommend Miss Aygen for teacher of the year.
award.  I would like to thank the Director of visiting instruction Services for hiring this
wonderful teacher.

   This program is so badly needed, and very few people are aware that it exits.  There
are only two teachers on the High School level.  It would truly please me to know my tax

Case 1:10-cv-00847-RMC   Document 1-1   Filed 05/24/10   Page 17 of 45

Fwd. - cynthia letter 2007 - Yahoo! Mail                          Page 2 of 2

**dollars are being used to enhance Home Schooling program.**


**With Sincere Thanks**


**Mrs. Cynthia A. Carter**

# DARIN JACKSON JR.

1825 Maryland Ave. NE #23
Washington, DC  20002
(202) 396-5229
djack315@hotmail.com

March 3, 2003

To Superintendent Paul Vance:

I believe a major mistake has been made in terminating Ms. Nursat Aygen's job  She has been a very supportive and influential person in my life.  In 2001, I had a kidney transplant and was forced to miss a lot of school.  While in the hospital, I met Ms. Aygen and she pushed me to keep up with my education.  By pushing me, Ms. Aygen not only helped me graduate that year, her dedication inspired me to do well enough to graduate within the top 10 at my high school, Theodore Roosevelt.  I am now attending Southeastern University and doing very well there.  And even though I am out of high school, she continues to stay in touch with me and make sure I am on the right path.  That is why it was a very big mistake to let her go, and she should be rehired as soon as possible if giving students in need the very best chance to succeed in life is the goal of the DC Public Schools System.  She is the best DIS teacher the District has.  And, she is the best teacher I have ever had.

Sincerely,

Darin Jackson Jr

Dr. Paul Vance
D. C. P .S.   Superintendent
825 North Capital ST. .N .E.
20002

March 5, 2003

Dear Dr. Paul Vance,
I am writing this letter in reference to one of your visiting teachers Ms. Nurasat Ayggen who was terminated from her position as a visiting teacher. Ms. Aygen has been very instrumental in my son's life. When my son Kevin was in the 12th grade, he became very ill. He was diagnosed with Crohn's   Disease. This was a very difficult time for my family but Ms. Aygen helped my family get through it. She worked diligently with my son so that he could graduate with his class.

There were times when Ms. Aygen would spend hours teaching my son. She had a great desire to see my son  recover as well as succeed. She even went to the hospital to read to him when he had surgery . Ms. Aygen came to my house twice a week: she would stay until 5:00. It was during the winter season. The weather was cold and snowy but she did not let that stop her from coming. Ms. Aygen  wanted my son to stay on target with his school work so that he would graduate with his class.

Ms. Aygen  visited Roosevelt high school where my son attended. She worked with the counselor and the teachers so that my son could receive proper instuctional guidance.

Ms. Aygen is a great asset to the visiting Instructional Services. She has made a great difference in my son's life. as well as my family's life. I can not express enough how much Ms. Aygen has helped my family during our time of crisis. .It was an experience  that my family will never forget. She will always be a part of my family's life.

Again , please consider  reinstating  Ms. Aygen. She is a very dedicated and loving teacher. As a parent I beg you to please reconsider your decision  concerning Ms. Aygen's dismissal. We really need teachers like her. .

Sincerely,
Bernice McCallum

RECEIVED

The Office of Employee Appeals
717 14th St., NW
Third Floor
Washington, DC    20005

05 NOV 25  PM 2: 29

OFFICE OF
EMPLOYEE APPEALS

ATT: OEA Board                                        Hand-delivered

RE: Aygen  v. DCPS, OEA Matter No. 1601-0004-04
    Appeal by the Agency of the April 18, 2005 OEA decision for my reinstatement
    as ordered by Judge Aikens-Arnold, Esq., and approved  by senior judge Hollis, Esq.

Dear Office of Employee Appeals:                      November 25, 2005

I was disappointed that the appeal of my case was not decided last month.  I have been
waiting to be reinstated since my separation from my teaching duties as a Visiting
Instruction Services (VIS) Teacher on February 14, 2003.  I hope and expect my case will
be decided at the next Board meeting later this month.

Also note that a VIS teacher position became available recently, but DCPS has refused to
place me in the position, without, once again, explaining the basis thereof. The agency is
pursing a totally meritless appeal by a law firm which reportedly charges $600.00 an
hour.

Sincerely,

Nursat I. Aygen, pro se
2705 S.9th Street, Apt. 31-B
Arlington, VA.    22204-2332

CC: Dr. Clifford Janey
    Superintendent, DCPS

    Councilwoman Kathy Patterson
    Chair, Education Committee

    Kenneth Slaughter
    Venable, LLP
    Attorneys for DCPS



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of Human Resources*
*for Staffing and Recruitment Services*
825 North Capitol Street, NE, Sixth Floor
Washington, DC 20002-4232
202/442-4080, fax: 202/442-5519
www.k12.dc.us

## MEMORANDUM

TO:          Beverly Wallace

FROM:        *Yolanda W. Jones*
             Yolanda W. Jones
             Human Resource Specialist

DATE:        11/22/2005

SUBJECT:     Teacher-VIS Position 05-COS-062

---

Listed below are the names of persons, who are eligible for consideration as a result of the panel interviews, completed for the position, Teacher-VIS Position, (ET-15).

**Note: this is listed with the highest ranking candidate to the lowest ranking candidate.

Nursat Aygen
Sandra Evans
Angela Mengat
Alena Cheppel
Nikki Riley
Fannie Plain
Aika Johar

Please indicate your selection by placing the person(s) name on the line(s) provided, signing this memorandum and submitting a Request for Personnel Action form (Form 52). Following the submission of the information requested, the selected candidate(s) will receive an offer of employment from the Staffing Division.

For further clarification, please contact me at (202) 442-7695.

Selected Candidate:   Ms. Nursat Aygen

Selected Candidate:   Ms. Sandra Evans   – waiting for reprogramming of funds to hire
                                           applicant.

Signature:   *Beverly H Wallace*   Date:   11/22/05

**DISTRICT OF COLUMBIA PUBLIC SCHOOL**
**Professional Performance Evaluation Process**
**Structured Observation Form**

Educator's Name  Ms. Nursat Aygen          Date          11/16/06

Lesson Observed  Science          Grade/Subject Secondary   Time To 10:15  From  9:25 a.m.

This observation tool is designed to provide both administrators and teachers with a guide to the indicators expected to be observed. A check (✓) will be placed in the box next to each indicator observed. (EE-Exceeds Expectations, ME- Meet Expectation, NI- Needs Improvement, U-Unsatisfactory)

### Demonstrates a commitment to students and their learning

| | 3 | 2 | 1 | 0 |
|---|---|---|---|---|
| Indicators: | EE | ME | NI | U |
| - Applies principles of learning such as active participation, motivation and reinforcement. | ✓ | | | |
| - Uses a variety of teaching methods and varied instructional activities to accommodate various student learning styles. | ✓ | | | |
| - Lesson is standards-based and follows the prescribed elements of a lesson design | | ✓ | | |
| - Uses a variety of questioning techniques to ensure transfer of knowledge. | ✓ | | | |

### Demonstrates knowledge of subject matter and how to teach it to students

| | 3 | 2 | 1 | 0 |
|---|---|---|---|---|
| Indicators: | EE | ME | NI | U |
| - Applies knowledge of current research and theory to the instructional program. | ✓ | | | |
| - Points out the relationship between the standards-based lesson content and what the students already know. | ✓ | | | |
| - Involves students in discovering the relationships between concepts, theories and the outside interests of students. | ✓ | | | |
| - Lesson reflects the standards-based curriculum. | ✓ | | | |
| - Information presented in the lesson is accurate and appropriate for the grade level. | ✓ | | | |
| - States clearly standards for lesson – what students will know and be able to do when the lesson is over; monitors students activities; provides feedback. | ✓ | | | |

### Demonstrates the ability to manage and monitor student learning

| | 3 | 2 | 1 | 0 |
|---|---|---|---|---|
| Indicators: | EE | ME | NI | U |
| - Demonstrates organizational skills and classroom management. | | ✓ | | |
| - Keeps students on tasks. | ✓ | | | |
| - Encourage participation of all students. | ✓ | | | |
| - Monitors students' understanding and makes re-explanations accordingly. | ✓ | | | |
| - Communicates clearly and effectively. | ✓ | | | |
| - Shares appropriate expectations for learning and behavior. | ✓ | | | |
| - Monitors progress; and makes appropriate teaching adjustments. | | ✓ | | |

*You will be notified in the case of an emergency that prevents the observation at the agreed upon date and another structured observation will be scheduled within two weeks*

*Professional Performance Evaluation Process*

COMMENTS/RECOMMENDATIONS

Nursat Aygen
November 16, 2006

Noted areas observed:

- There was a place ready for instruction.
- The teacher explained to the student what the lesson was for the day.
- The teacher praised the student when she responded correctly and encouraged higher level thinking.
- Plenty of materials on the topic was available for easy reference.
- Reading was incorporated in the lesson.  The student read what was expected of her and answered the questions.
- The lesson was very interesting; however, it was a little too long.  Do not deviate from the lesson.

Question??

Are books and other reading materials left with the student?

* Educator's Signature _____ Date 11/21/06

Administrator's Signature _____ Date 11/21/06

* Does not mean agreement.

*Professional Performance Evaluation Process*



**The Leukemia & Lymphoma Society** would like to thank the following individuals
who volunteered their time to plan, coordinate and implement this conference.
Without this committee, this conference would not have been possible.

### The 2007 Back to School Conference Planning Committee

Brian Hull, Committee Chair, Parent Liaison & Principal
Colin L. Powell Elementary School

Nursat Aygen, Visiting Instructor
DC Public Schools

Linda Bart, Acting Elementary Counselor Specialist
Montgomery County Public Schools

Connie Connor, LCSW
Life with Cancer / Pediatric Hematology & Oncology of Northern Virginia

Tracy Councill, Director, Art Therapy Program
Georgetown University Hospital's Lombardi Comprehensive Cancer Center

Clare Lynam Goldfogle, Parent Liaison

Tara Heery, LICSW, Pediatric Case Manager
National Rehabilitation Hospital

Evelyn Joran-Thiel, MSN, PNP, CPON
Blue Ridge Hospice and Shenandoah University

Jay McClain, Principal
Bailey's Elementary School for the Arts & Sciences

Kelly Mountain, School Psychologist
Arlington Public Schools

Lynda Mulhauser, LCSW

Elena Padua,  LCSW
Children's National Medical Center

Teresa Polk, Supervisor of School Health Services
Prince William County Schools

Terri Tomoff, Parent Liaison



# Clinic to Classroom: Facilitating School Success for Children with Cancer
November 16, 2007
8:30 a.m. to 2:30 p.m.

8:30 a.m.
**Registration & Coffee**
(Colony Ballroom)

**Resource Fair open**
(Charles Caroll room)

9:00 a.m. − 10: 30 a.m.
**Keynote Address**
*Health-Related Outcomes in Survivors of Childhood Acute Lymphoblastic Leukemia: Knowledge is Power*
Dr. Gregory Reaman
(Colony Ballroom)

10:30 a.m. − 11:30 a.m.

**The Child Study Meeting: What to Expect**
(Colony Ballroom)

*Facilitator*: Brian Hull
*Parent*: Terri Tomoff
*Principal*: Jay McClain
*School Counselor*: Linda Bart
*School Nurse*: Teresa Polk
*Pediatric Oncology Social Worker*: Tara Heery, LICSW
*Homebound Instructor*: Nursat Aygen, Visiting Instructor, DC Public Schools
*Classroom Instructor*: Melanie Rogers

11:30 p.m. − 12:45 p.m.
**Lunch & Resource Fair**
(Charles Carroll room)

12:45 p.m. − 1:45p.m.
**Breakout Sessions**

**Navigating the Educational System: A Session for Parents**
(Pyon Su Room)
Moderator: Clare Goldfogle
Presenter: Alma Morgan, Educational Consultant, VCU Medical Center

**The Role of the School Nurse Caring for the Student with Cancer**
(Juan Jimenez Room)
Moderator: Tara Heery, LICSW, National Rehabilitation Hospital
Presenters:
Evelyn Joran-Thiel, PNP, & Teresa Polk, Supervisor of School Health Services Program, Prince William County Schools

**Creating a Re-Entry Plan for Students with Chronic Illness**
(Colony Ballroom)
Moderator: Jay McClain, Principal, Bailey's Elementary School for the Arts and Sciences
Presenter: Carol Kaffenberger, PhD, Program Coordinator of the Counseling & Development Graduate Program at George Mason University

**How to Support School-Age Siblings of Children Treated for Cancer**
(Thurgood Marshall Room)
Moderator: Sarah Singer, LCSW, The Leukemia & Lymphoma Society
Presenter: Lori Wiener, PhD, National Cancer Institute

2:00 p.m. − 2:30
**Kids Panel:**
**Local Childhood Cancer Survivors Share their Experiences of Returning to School after Cancer Treatment**
(Embassy Room)
Moderator: Elena Padua, LCSW, Children's National Medical Center

2:30 p.m.
**Closing Remarks**

---

**Contact hours:** Please return your evaluation form & CEU registration form when you pick up your CEU certificate at the end of the conference. Certificates are available at the registration table. **Please note:** *No contact hours will be recorded  without complete registration information even if you pick up a certificate.*

**Speakers and Panelists**

**The Leukemia & Lymphoma Society would like to thank the following individuals who have volunteered their time and expertise to make this conference a success.**

**Nursat I. Aygen** is a Visiting Instruction Teacher (VIS) for the District of Columbia Public Schools where she teaches all high school subjects to homebound and hospitalized children. She is a Phi Beta Kappa from Sweet Briar College in Virginia and has an MBA degree from NYU Stern School of Business. Miss Aygen holds multiple teaching licenses in DC and Virginia.

**Linda Bart** is the Elementary Counselor Specialist for Montgomery County Public Schools. She oversees the training and professional development for 130 elementary school counselors. At her former school, she was involved in The Leukemia & Lymphoma Society's Pennies for Patients program for four years, and she utilized the Trish Greene Back to School program materials to support a student survivor of leukemia.

**Clare Lynam Goldfogle** is the mother of a ten-year-old boy who completed his chemotherapy treatments last year for Acute Lymphoblastic Leukemia (ALL). He was first diagnosed in May 2003. Clare is a member of the planning committee for this conference and has participated in several Light the Night Walks. She is a senior vice president at the public relations firm Powell Tate Weber Shandwick.

**Tara Heery, L.I.C.S.W.** is the Pediatric Case Manager at the National Rehabilitation Hospital. She was previously an oncology social worker at Georgetown University Health's Lombardi Comprehensive Cancer Center in Washington, DC. She works with pediatric patients and their families every day and assists with their school re-entry and adjustment to diagnosis and treatment.

**Brian Hull, M. Ed.** is Principal of Colin L. Powell Elementary School in Centreville, Virginia. He is the parent of a teenager who is in remission from Non-Hodgkin Lymphoma, and he is chair of the planning committee for this conference. Brian and his family have raised $85,000 for The Leukemia & Lymphoma Society since 1999 through The Leukemia & Lymphoma Society's Team in Training program. They live in Herndon, Virginia.

**Evelyn Joran-Thiel, M.S.N., P.N.P**. is a Nurse for Blue Ridge Hospice and Adjunct Nursing Instructor at Shenandoah University in Winchester, Virginia. She has worked with pediatric oncology patients in the outpatient, inpatient and bone marrow transplant settings, and has assisted many of them with school reentry.  Evelyn has been a Medical Staff member at Camp Fantastic since 1995 and has served on the planning committee for each of the four years The Leukemia & Lymphoma Society has sponsored a conference on back-to-school issues for children with cancer.

**Carol Kaffenberger, Ph.D.** is an Associate Professor and Program Coordinator of the Counseling & Development Graduate Program at George Mason University in Fairfax, Virginia. Carol is the mother of an acute myelogenous leukemia survivor and her research focuses on school reentry and the impact of cancer and other chronic illnesses on children and adolescents. She chairs the Fairfax County Public Schools Support Team Committee and wrote the *Handbook for School Support Teams,* an abridged version of which is included in this notebook.

**Jay McClain, M.Ed.** is the Principal of Bailey's Elementary School for the Arts and Sciences in Falls Church, Virginia, and a member of the planning committee for this conference.  Jay is the parent of an eight-year-old son who died in 2005 after his second bone marrow transplant at Johns Hopkins University Hospital for Acute Lymphoblastic Leukemia.  He lives with his wife and three other children in Fairfax, Virginia.

**Alma Morgan, MEd** is an Educational Consultant in the Hospital Education Program at Virginia Commonwealth University Medical Center for the Pediatric Hematology/Oncology Program.  She visits approximately 90 schools per year developing educational plans for children initially diagnosed and transitioning back to school following treatment. She also conducts in-



**RE: skit**                                                    Friday, November 16, 2007 7:34 PM

**From:** "Hull, Brian M " <Brian.Hull@fcps.edu>
  **To:** "nursat aygen" <aygen111@yahoo.com>

Hi Nursat,

I am just reading this e-mail for the first time today.  You did such a wonderful job with your presentation today.
I am so appreciative of your involvement with the committee and this conference.  Hopefully, you will be
interested in remaining involved with the committee when planning gets underway again next spring.

I wish you only the very best as we enter this holiday season.  Happy Thanksgiving!

Brian

_____

From: nursat aygen [mailto:aygen111@yahoo.com]
Sent: Thu 11/15/2007 11 02 PM
To: Hull, Brian M.
Cc: Terri Tomoff
Subject  skit


Dear Brian,

These are some of  the points I plan on making. Tomorrow before our skit, I will ask Terri about an anecdote
that might be informative about Ryan's homebound instruction.


As Ryan's home health teacher I worked with him 3 days a week for a total of 6 hours per week for about six
months. There were weeks when he had instruction for four hours in order to accomodate his medical
appointments which were coming at him fast and furious. We kept his schedule flexible in order to maximize
his instruction time.

I have prepared a report card for Ryan and I am pleased that he is on task and on grade level in both math and
English;he does, however, need to hone his writing skills.

Most of the time Ryan was able to work for two hours straight but there were occasions when after about one
and a half hour he would want to switch to an academically less rigorous activity . Even when he was
particularly physically challenged he would enjoy reading a book from the Amelia Badellia series or accomplish
some good art work.

Ryan's mom, an educator herself, was very helpful. For example, the mom had maps on her kitchen wall- one
a world map and the other  of the United States. They both came in very handy when Ryan worked on his
social studies and current events or reviewed his work between his homebound classes.

There are studies on how cognitive and intellectual engagement of patients contribute to their well being.  It is
of course a fine line deciding how far and how rigorous the academic work should be when the child is feeling
particularly crummy or if he or she should have class at that particular time  Collaboration  between the parent
and the home health care teacher/visiting teacher is very important in furthering the child's education.

I expect Ryan to make a smooth transition back to school even though it will be slow at first. The transition will

Case 1:10-cv-00847-RMC   Document 1-1   Filed 05/24/10   Page 28 of 45

RE: skit - Yahoo! Mail                                          Page 2 of 2

be seamless in his case since he will resume his work at school right after his last home bound class.

_____

Never miss a thing. Make Yahoo your homepage.
<http://us.rd.yahoo.com/evt=51438/*http://www.yahoo.com/r/hs>

Case 1:10-cv-00847-RMC   Document 1-1   Filed 05/24/10   Page 29 of 45

Nursat Aygen, OEA Matter No '601-004-04 - Yahoo! Mail                                    Page 1 of 2



**Nursat Aygen, OEA Matter No. 1601-004-04**                          Thursday, June 8, 2006 1:01 PM

**From:** "leyland" <leyland@shermandunn.com>
  **To:** warren.cruise@dc.gov
  **Cc:** aygen111@yahoo.com


June 8, 2006

Dear Mr. Cruise,

     I have attempted to contact you by telephone, but have been unable to reach you.

     I am inquiring into the case of Ms. Nursat Aygen. More than a year ago, Administrative Judge Muriel A. Aikens-Arnold, of the Office of Employee Appeals (OEA) of the District of Columbia , issued a decision in Ms. Aygen's favor. Thus, in her Decision in Matter No. 1601-004-04, issued on April 18, 2005, Judge Aikens-Arnold ruled that the D.C. Public Schools (Agency) had removed Ms. Aygen from her position as a Visiting Instruction Service Teacher effective March 14, 2003, in an adverse action taken without cause and without giving Ms. Aygen an opportunity to respond. Consequently, the Judge: (1) reversed the termination; (2) ordered the Agency to reinstate Ms. Aygen and reimburse her for all pay and benefits lost as a result of the improper removal; and (3) file with the OEA documents showing compliance with her decision and Order within thirty days of the date on which the decision becomes final.

     The Agency then petitioned for review of Judge Aikens-Arnold's decision, and the case was set for hearing for a date in October of 2005. Ms. Aygen's case was, however, removed from the hearing docket for reasons that have never been explained, and the case has not been reset for hearing. Despite repeated attempts by Ms. Aygen to obtain information on the status of her case, she has never been given any such information. As you know, termination from employment is the most serious action that can be taken against an employee – an action so severe that it has often been referred to as the "death penalty" of employment law. Ms. Aygen, having won her case, is certainly entitled to have the Agency's appeal addressed in a timely manner, so that the final outcome of these proceedings can be determined, and so that such a difficult and serious a matter can be put to rest. Moreover, presumably, interest continues to accrue on the Agency's financial obligation to Ms. Aygen, should she prevail, and this delay is, in addition to prolonging Ms. Aygen's pain, unfair to the taxpayers as well. Indeed, an Opinion and Order on Review in the case that replaced Ms. Aygen's on the docket was issued almost immediately.

     Please provide me with: (1) the reason Ms. Aygen's case was removed from the docket in October 2005; (2) the reason the case has not been rescheduled; and (3) a new date on which the case will go forward. If you are unable to answer these questions, please provide me with the name of, and contact information for, any person or persons who can provide the information.

     I thank you I advance for your assistance in this matter.

Sincerely,

Nora Leyland


*Nora Leyland*
SHERMAN, DUNN, COHEN, LEIFER & YELLING, PC
900 Seventh Street, NW
Suite 1000

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

**Department of Human Resource**
825 North Capitol Street, NE • 6th Floor
Washington, DC 20002-4232
Tel: (202) 442-4090 • Fax: (202) 442-5316
www.k12.dc.us

September 24, 2008

NURSAT AYGEN (ET-15 Teacher)
2705 9TH ST S APT 31B
ARLINGTON VA 22204-2332

Ms. Aygen:

The Office of Human Resources will ensure that you are paid for the days worked at Brightwood Elementary School between August 19, 2008 and September 24, 2008. Pending certification of time and attendance from the school to the Office of Payroll, you will receive a paycheck reflecting days and hours worked.

Sincerely,

Jasmine Jose
Director, Staffing & Recruitment Services

cc:     Principal
        Staffing Specialist
        Employee Services Specialist
        Regional Superintendent
        Official Personnel File

Witness Statement

March 21, 2009.

On September 25th, I was at Brightwood Elementary School with Miss Aygen. She was denied entry by the principal, who said "I am not permitted to permit (sic) you into the building." Asked by Miss Aygen for a reason, she refused to give her one, saying she should go to Human resources."

On the same day we went back to Human Resources, and we were told "Your information is being processed." I was struck by the refusal to answer or explain to a person being stripped of her livelihood.

I accompanied Miss Aygen to a scheduled meeting with Traci Higgins on October 3rd at which Miss Aygen was to be allowed to state her case. Parents of a student who had been taught/rescued by Miss Aygen had shown up on her behalf to testify as to her excellent work. Miss Higgins refused to speak to them or allow them to testify on Miss Aygen's behalf even after they had taken time off from their schedule and traveled across town to testify. Miss Higgins refused to consider the questionable validity of the termination nor did she consider Miss Aygen's official reinstatement or any of Miss Aygen's case of defense. She denied are Miss Higgins claimed the union grievance had been filed too late and there would in fact be no hearing. Miss Higgins said "go to the OEA"

Andrew L. Eiva

signed + written on March 21, 2009

| DISTRICT | DIVISION OF STUDEN⸌ ⸍RVICES |
|---|---|
| OF | OFFICE OF TRAN. ⸌RY SERVICES |
| COLUMBIA | **HOMELESS CHILDREN AND YOUTHS, MIGRANT EDUCATION, AND VISITING** |
| PUBLIC | **INSTRUCTION SERVICE PROGRAMS** |
| SCHOOLS | Hamilton Building, 1401 Brentwood Parkway, N.E., Washington, D.C. 20002 |
| | (202) 698-3300  FAX (202) 698-6056 |

June 23, 2003

To Whom it May Concern:

This is a letter of recommendation for Ms. Nursat Aygen who was a Visiting Instruction Service (VIS) teacher with the District of Columbia Public Schools. The VIS program provides instruction to students who are homebound or hospitalized due to medical problems and cannot attend school. Ms. Aygen worked as a secondary school teacher. Due to enrollment changes, Ms. Aygen was terminated. However, she was an exemplary teacher.

In observing Ms. Aygen as a teacher, she displayed warmth and a genuine love for teaching. She was and continues to be an advocate for children. Ms. Aygen always went the extra mile in assisting them. She was respected by her peers, parents, students and hospital staff.

In addition, Ms. Aygen was always striving for new opportunities and experiences. I strongly recommend that Ms. Aygen be considered for the position that she applied.  I feel that Ms. Aygen will be an asset to the program.  If you wish further discussion, please feel free to contact me at (202) 698-3300.

Sincerely,

Beverly H. Wallace, EdD
Director
Office of Transitory Services

cc:    Mr. Ralph Neal
       Ms. Nursat Aygen
       Files



THE **PRAXIS**
S E R I E S®
*Professional Assessments for Beginning Teachers*®

# ETS Recognition of Excellence

*Presented To:*

## NURSAT I AYGEN

### SOCIAL STUDIES: CONTENT KNOWLEDGE

*on*

### March 06, 2004

*In acknowledgement of your outstanding score on The Praxis Series™ who took this assessment in previous years. This achievement indicates a high level of proficiency in an area critical for professional educators.*

*Your exceptional performance earned a score that ranks within the top 15% of all test takers*

## Congratulations

Kurt Landgraf
President, Chief Executive Officer
Educational Testing Service

```
PAYROLL HISTORY              ***EMPLOYEE CHECK DISPLAY***                    PYHIC03
ORG ID        EMPL ID        CHK DT 04/25/2008   FED S 02 00 ST EMP 0009 LC1
GA                           END DT 04.12.2008   ST  S 02 00 ST THD 0047 LU2
AYGEN,NURSAT 1                  SCH 209           2ST S 02 00 2ND ST        LC3
CHK/ADV C525941                                         ST RES 0047 LC4
                            ***CURRENT GROSSES***                           LC5
TTL    2,341.20  FWT   2,114.96  ST    2,114.96  SDI            .00
FUT       .00    SUT      .00    RTR   2,341.20  2ST            .00
FCA       .00    MED   2,114.96  XCS      .00    LC1            .00
LC2       .00    LC3      .00    LC4      .00    SPC         425.67
 EARNINGS  HOURS   GROSS AMT  DEDUCTION    AMOUNT  DEDUCTION      AMOUNT
REGULAR    4.00+    117.06  PRETAX HL      38.94
SICK PAY  36.00+  1,053.54  93 TEACH      187.30
SICK PAY  40.00+  1,170.60  MEDICARE       30.66
                           FEDERAL T      300.82
                           STATE T        102.06
                           BASIC LIF        3.97
                           UNION DUE       29.61


TOTAL GROSS=    2,341.20+  DEDUCTIONS=     693.36+ NET PAY=    1,647.84+
NEWER CHECK/ADVICE DISPLAYED.
TRAN 3   EMPL 226924597                 CHK C525941 ORG GA
PF3=OLDER CHK 4=NEWER 7=EMP 8=TBL 10=INQ 11=FUNC PA2=TR MENU  ENTER=EARNINGS
```

Paycheck stub from Sunday March 30, 2008

to Saturday April 20, 2008

DCPS started charging my paid sick leave in lieu of unpaid FMLA leave as soon as my mother was admitted to ICU on 3/31/2008.

I informed the new supervisor Janice Talley Melvin at about 8:00 AM in phone call from my mother's hospital room 4/1/0 and Janice Talley Melvin approved the leave immediately. Janice Talley Melvin, DCPS, Director, VIS

(202) 989-3506 work number

```
PAYROLL HISTORY              ***EMPLOYEE CHECK DISPLAY***                    PYHI003
ORG ID        EMPL ID        CHK DT 05/09/2008   FED S 02 00 ST EMP 0009 LC1
GA            2█████████7     END DT 04/26/2008   ST  S 02 00 ST TXD 0047 LC2
AYGEN,NURSAT I                  SCH 210           2ST S 02 00 2ND ST       LC3
CHK/ADV  C527593                                             ST RES 0047 LC4
                             ***CURRENT GROSSES***                          LC5
TTL     2,311.94   FWT     2,088.04   ST      2,088.04   SDI         .00
FUT         .00    SUT          .00   RTR     2,311.94   2ST         .00
FCA         .00    MED     2,088.04   XCS          .00   LC1         .00
LC2         .00    LC3          .00   LC4          .00   SPC      420.35
 EARNINGS    HOURS    GROSS AMT  DEDUCTION     AMOUNT   DEDUCTION    AMOUNT
SICK PAY    32.00+      936.48  PRETAX HL       38.94
HOLIDAY      8.00+      234.12  93 TEACH       184.96
SICK PAY    39.00+    1,141.34  MEDICARE        30.28
LWP          1.00+         .00  FEDERAL T      294.09
                               STATE T        100.52
                               BASIC LIF        3.97
                               UNION DUE       29.61


TOTAL GROSS=      2,311.94+  DEDUCTIONS=      682.37+ NET PAY=     1,629.57+
NEWER CHECK/ADVICE DISPLAYED.
TRAN 3   EMPL 226924597                  CHK C527593 ORG GA
PF3=OLDER CHK 4=NEWER 7=EMP 8=TBL 10=INQ 11=FUNC PA2=TR MENU  ENTER=EARNINGS
```

```
PAYROLL HISTORY        ***EMPLOYEE CHECK DISPLAY***
ORG ID    EMPL ID           CHK DT 05/23/2008  FED S 02  00 ST EMP 0009 LC1    PYHI003
GA                          END DT 05/10/2008  ST  S 02  00 ST TXD 0047 LC2
AYGEN,NURSAT I                  SCH 211         2ST S 02  00 2ND ST      LC3
CHK/ADV                                                      ST RES 0047 LC4
                                                                         LC5
                            ***CURRENT GROSSES***
TTL       FWT      .00     ST      .00     SDI      .00
FUT       SUT      .00     RTR     .00     2ST      .00
FCA       MED      .00     XCS     .00     LC1      .00
LC2       LC3      .00     LC4     .00     SPC      .00
EARNINGS  HOURS   GROSS AMT  DEDUCTION  AMOUNT  DEDUCTION  AMOUNT
LWP       40.00+    .00
LWP       40.00+    .00


TOTAL GROSS=       0.00+  DEDUCTIONS=          0.00+  NET PAY=          0.00+
CHECK/ADVICE DISPLAYED.
TRAN 3   EMPL 226924597           CHK 000000   ORG GA
PF3=OLDER CHK  4=NEWER 7=EMP 8=TBL 10=INQ 11=FUNC PA2=TR MENU  ENTER=EARNINGS
```



To: MS. Janice Talley-Melvin, Director, VIS
FAX: (202) 698-6056
From: Nureat I. Aygen, VIS Teacher
Re: My mother's hospital stay

Name: DATE May 5, 2008          MR # _____   Ht _____   Wt _____

Allergies: _____

DO NOT USE: U, IU, Q.D., QD, qd, qd, Q.O.D., QOD, q.o.d., qod, X.O mg, .X mg, MS and MSO4

| DATE | NOTES |
|------|-------|
| 5/4/8 | To Whom it may Concern Miss ▮▮▮▮ ▮▮▮▮ was admitting to my Service on 5/3/8 until today Please feel free to call for any questions |
| | @ (703) 671-5200 |
| | M. Fahima M.D. |

IRGINIA HOSPITAL
CENTER

hysician's Progress Notes

Page 1 of 2

## Fax Call Report

HP LASERJET FAX
May-5-2008   3:02PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 227 | 5/ 5/ 2008 | 3:01:21PM | Send | 9202698698056 | 0:58 | 1 | OK |



hp LaserJet 3380
invent

To: Janice Talley - Melvin, Director, VIS
FROM: Nurset I. Aygen, VIS Teacher
FAX. (202) 698-5606
DATE. May 8, 2008
RE: My mother's hospitiligation

Dear Janice,

As per our conversation,
this is to state that I am the caregiver
attending to my mother's immediate needs,
translating for her, etc every day.

Thank you for your support.

Nurset I. Aygen

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|---|
| 310 | 5/ 8/2008 | 7·39 42AM | Send | | 0·00 | 0 | No Answer |

Fax Call Report

May-8-2008   7·41AM

HP LASERJET FAX

hp LaserJet 3380



To: Ms Janice Talley-Melvin, Director, VIS
FROM: Nusrat I. Aygen, VIS Teacher
FAX: (202) 698-5056
DATE: May 11, 2008
RE: My mother

Dear Janice,

As per your request, this is to state that I am the caregiver for my mother.

Thank you for your support and for assigning other teachers to my children during my absence.

Happy Mother's Day to you and all the mothers in your family, in your office and in the Humbolton Building.

Nusrat I. Aygen

May-11-2008  2:50PM

HP LASERJET FAX

hp LaserJet 3380



invent

Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 359 | 5/11/2008 | 2:49:38PM | Send | 9206986056 | 0:50 | 1 | OK |

5-20-08  6:20PM;Powhatan Nursing Hom                    ;703 508 5583                    # 1

PLEASE FAX THE FMLA form
to (703) 538-5583 as soon as practicable-
to Nursat Aygen

TO: Janice Talley - Melvin,
        VIS Director
FAX: (202) 698-6056
FROM: Nursat I. Aygen
        VIS Teacher

RE: FMLA
DATE: 5-20-08

Dear Janice,

        Thank you for your support
and understanding during this difficult
time in my life. However, I would still
like to do a FMLA- (Family medical
Leave Act) for my mother. Can you please
help me? Thank you-
        Nursat I. Aygen
        (202) 215-5460 cell
        2905 S. 9th St., # 31-B
        Arlington, VA 22206

NOV. 10, 2009  4:10PM                    TELEPHONE ANSWER...                    NO.0156    6007 '01 'AON

FAX· (202) 690-6056
DATE· 5-29-08

To GEORGE
BORDONEAUE
AFT Administrat
(202)

**Health Choices P.L.L.C.**
3500 N. 14th Street
Arlington Va, 22201
(703) 527-5384 and  Fax (703) 527-5881

May 23, 2008

To the Employer of Nurset Aygen:

Mrs. N███ A███ is very sick and she needs to be accompanied by her daughter, Nursat Aygen at all times to help her for communication/translation for medical purposes and to prevent aspiration.  Mrs. Aksit cannot speak English or call for help in case of emergencies and she cannot communicate with her care givers.

Thank you for your consideration.

Yours truly,

Marie Schum-Brady, M. D.

## Request for Leave or Approved Absence

| 1  Name *(Last, first, middle)* | 2.  Employee or Social Security Number |
|---|---|
| AYGEN NURSAT  I | ~~illegible~~ |

3.  Organization

Transitory Services

| 4 | | | | | | Type of Leave/Absence | 5 | Family and Medical Leave |
|---|---|---|---|---|---|---|---|---|

| Check appropriate box(es) and enter date and time below) | Date | | Time | | Total Hours | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information |
|---|---|---|---|---|---|---|
| | From | To | From | To | | |
| ☐ Accrued annual leave | 12-3-7 | 12-3-7 | 8.00 | 12-00 | 4 | |
| ☐ Restored annual leave | | | 12.00 | 3.30 | | |
| ☐ Advance annual leave | | | ~~crossed out~~ | | | ☐ I hereby invoke my entitlement to family and medical leave for |
| ☐ Accrued sick leave | | | ~~crossed out~~ | n.a. | | |
| ☐ Advance sick leave | | | ✓ | | | ☐ Birth/Adoption/Foster care |

Purpose: ☐ Illness/injury/incapacitation of requesting employee

☐ Medical/dental/optical examination of requesting employee

☐ Care of family member, including medical/dental/optical examination of family member, or bereavement

☑ Care of family member with a serious health condition

☐ Other

☐ Serious health condition of spouse, son, daughter, or parent

☐ Serious health condition of self

☐ Compensatory time off

☐ Other paid absence *(specify in remarks)*

☐ Leave without pay

*Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency*

6  Remarks

SUPERVISOR CIRCLE
SCHEDULED OR UNSCHEDULED

7  Certification: I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal

| 7a  Employee signature | 7b  Date signed |
|---|---|
| *Nursat I. Aygen* | 12-3-7 |

8a  Official action on request      ☐ Approved      ☐ Disapproved      *(If disapproved, give reason. If annual leave, initiate action to reschedule.)*

8b  Reason for disapproval

| 8c  Signature | 8d  Date signed |
|---|---|
| *signature* | 12-3-2007 |

Privacy Act Statement

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness, to a State unemployment compensation office regarding a claim under Federal Life Insurance or Health Benefits carriers regarding a claim, to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law, to a Federal agency when conducting an investigation for employment or security reasons, to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration, or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

## REQUEST FOR LEAVE OR APPROVED ABSENCE

| 1. NAME (Last, First, Middle Initial) | 2. EMPLOYEE OR SOCIAL SECURITY NUMBER |
|---|---|
| AYGEN, NURSAT I. | ████████████ |

3. ORGANIZATION

| 4. TYPE OF LEAVE/ABSENSE (Check appropriate box(es) below) | Date From | To | TIME From | To | TOTAL HOURS | 5. FAMILY AND MEDICAL LEAVE |
|---|---|---|---|---|---|---|
| ☐ Accrued Annual Leave | 08-25-09 | 08-25-09 | 8:00 | 3:30 | 8 | If annual leave, sick leave or leave without pay will be used under the Family and Medical leave Act of 1993 please provide the following information |
| ☐ Restored Annual Leave | | | | | | |
| ☐ Advanced Annual Leave | | | | | | ☑ I hereby invoke my entitlement to Family and Medical Leave for |
| ☐ Accrued Sick Leave | | | | | | ☐ Birth/Adoption Foster Care |
| ☐ Advanced Sick Leave | | | | | | ☑ Serious Health Condition of Spouse Son Daughter or Parent |
| Purpose: ☐ Medical/dental optical examination of requesting employee ☐ Other | | | | | | ☐ Serious Health Condition of Self |
| ☑ Care of family member/bereavement including medial/dental /optical examination of family member | | | | | | |
| ☐ Compensatory Time Off | | | | | | Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993. |
| ☐ Other Paid Absence (Specify in Remarks) | | | | | | |
| ☐ Leave Without Pay | | | | | | |

6. REMARKS

7. CERTIFICATION: I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| EMPLOYEE SIGNATURE Nurgat I. Aygen | DATE 08-28-09 |
|---|---|

8. OFFICIAL ACTION ON REQUEST: ☑ APPROVED   ☐ DISAPPROVED
(If disapproved, give reason. If annual leave, initiate action to reschedule.)

| SIGNATURE | DATE |
|---|---|

### PRIVACY ACT STATEMENT

Section 6.311 of Title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information ay be: To the Department of Labor when processing a claim from compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Service Administration in connection with its responsibilities for records management

Where the employee identification number is your Social Security Number, collection of this information is authorized by Executive Order 9397. Furnishing the information on this form, including your Social Security Number, is voluntary, but failure to do so may result in disapproval of this request

If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes

NSN 7540 00 753 5067
Previous edition may be used

STANDARD FORM 71 (REV 12 97)
Prescribed by OFFICE OF PERSONNEL MANAGEMENT 5 CFR Part 630

Chancellor Michelle Rhee, DCPS
825 N. Capitol Street, NE, 9th floor
Washington, DC   20002-1994   Via Fax: 202-442-5026 and First Class Mail

RE: My status as an ET-15 VIS Teacher and FMLA

Dear Ms. Rhee,                                             July 1, 2008

I am writing to you because DCPS has been trying to take advantage of my mother's
recent devastating hospitalization since 03/31/08 (they were notified as of 04/01/08) to
continue to harass me and threaten my job  when I have asked for time off  to take care of
my gravely ill mother. She is very frail and has a grim diagnosis, PSP-parasupranuclear
palsy.

I cannot begin to describe the distress DCPS has caused me at a time when I need all my
resources and peace of mind trying to help my ill mother.  What they are putting me
through is truly reprehensible. As an example of what I have to deal with, I am enclosing
a copy of what I filed with OEA last week. I don't even know if they once again are
trying to wrongfully terminate me, or once again wrongfully suspend me, or if they are
simply continuing to wrongfully harass me.

DCPS cannot terminate me because it is against the law to terminate someone who has
asked for leave under the federal law, FMLA, and they have not notified me as required.

   1. If I was terminated, I want any suggestion of it withdrawn.
   2. If I am not terminated, I need to continue to receive my pay.  DCPS has elected to
   substitute my paid sick days for unpaid FMLA leave since I took time off starting on
   04/01//08.  On May, 6, 2008 (I was still in the hospital with my mother at that time)
   my supervisor, Ms.Janice Talley-Melvin told me I was out of leave. If this in fact is
   true, I would like my back leave that is due me for the three years I was wrongfully
   terminated to be applied to my current FMLA leave and so that DCPS continues to
   substitute my paid sick leave for unpaid FMAL leave. (I was wrongfully terminated
   from my job on Valentine's Day 2003 and I won my OEA case and on May 23, 2008
   the OEA Board issued a final decision affirming my win, reinstatement, back pay and
   benefits etc- Aygen v. DCPS OEA Matter No.1601-0004-04)

I respectfully need this matter to be resolved as soon as possible, and I would like to meet
with you to discuss what is happening. Please let me know when we can meet at your
convenience.

Sincerely,

Nursat I Aygen, VIS Teacher, DCPS

2705 S 9th Street, Apt 31-B
Arlington, VA  22204-2332   (202) 215-5160 cell, 703- 920-1150 home

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS

Office of Human Resources
Executive Director
825 North Capitol Street, NE, Sixth Floor
Washington, DC 20002-4232
(202) 442-5420 fax: (202) 442-5315
www.k12.dc.us

August 6, 2008

Ms. Nursat Aygen
2705 9th Street
Apt. 31B
Arlington, VA 22204

Dear Ms. Aygen,

I am in receipt of your inquiries regarding your termination from the District of Columbia Public Schools (DCPS) effective May 27, 2008.

I have asked representatives from the Office of the Chancellor and the Office of Human Resources to review your official personnel file and to speak with your supervisor, Ms. Janice Talley-Melvin. It has been determined that you were properly separated from service effective May 27, 2008. A copy of your termination letter is attached to this letter.

I am also in receipt of your inquiries regarding your claims for back pay and restoration of leave pursuant to the May 23, 2008 Opinion and Order on Petition for Review, Office of Employee Appeals Matter No: 1601-0004-04 regarding your separation from service on March 14, 2003 (Opinion and Order).

I have asked the Office of the Chief Financial Officer (CFO) to determine your back pay and to determine your accrued sick leave and annual leave pursuant to the Opinion and Order. We will need your cooperation to determine your back pay. Please fill out the attached Affidavit of Earnings and submit to Matthew Moeller, Office of the Chancellor. Along with the Affidavit of Earnings, please also submit tax returns and wage statements for years 2003, 2004, 2005, and 2006.

Because you were absent without leave from April 1, 2008 until May 27, 2008 to care for your ailing mother, if the CFO's office determines that you are owed accrued sick leave, you will also be paid for those days.

Thank you for your service to the District of Columbia Public Schools. Please contact your Washington Teachers' Union representative with any further questions or inquiries.